UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BERNARD FURR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:18-cv-01400-AGF ) |
| CITY OF HAZELWOOD, MISSOURI | ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Plaintiff Bernard Furr, represented by counsel, brought this action against Defendant City of Hazelwood alleging malicious prosecution, false imprisonment, and abuse of process under Missouri law, as well as violations of his Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983.[1] This matter is before the Court on Defendant City of Hazelwood's motion for summary judgment. (Doc. No. 26). For the reasons discussed below, the Court will grant Defendant's motion as to Plaintiff's § 1983 claims. Because the Court declines to exercise supplemental jurisdiction over the remaining state law claims, those claims will be dismissed without prejudice.

---

[1] The complaint also alleged causes of action against two Hazelwood Police Officers, Matthew Curry and Brendan Gilbert. Plaintiff voluntarily dismissed Officers Curry and Gilbert on January 7, 2019. (Doc. No. 13).

# BACKGROUND

Unless otherwise indicated, the facts set forth are undisputed.[2] On November 17, 2016, Hazelwood Police responded to an attempted robbery that occurred at a Phillips 66 Gas station. Police arrived at the scene and interviewed the two victims, Kamal Farhoud and Ibraheem Esheh, who were independently approached by the suspect. Farhoud told police that while he was getting into his car a man approached him from behind and told him to hand over all of his money and his keys. When Farhoud turned around to face the man, he noticed that the suspect was holding the waistband of his pants, suggesting that he had a firearm.[3] Farhoud refused to hand over his items and went back into the Phillips 66 to call the police.

---

[2] As an initial matter, the Court notes that Plaintiff's opposition to Defendant's summary judgment fails to comply with Local Rule 4.01(E). Local Rule 4.01(E) requires that,

> Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.019(E). Here, Plaintiff provided the Court with his own statement of material facts, but he did not respond to Defendant's statement of facts. As such, Plaintiff has deemed to have admitted all facts which were not specifically controverted. Further, the Court notes that Defendant's statements of material facts are well supported by the record.

[3] In his statement of facts, Plaintiff asserts that Farhoud never told police that the suspect implied he had a weapon. In support of this assertion, Plaintiff cites to the official police report from the incident. However, the report he cites directly refutes his claim. Both victims during their interviews with police said that the suspect implied he had a gun by grabbing at his waistband. (*See* Offense/Incident Report, Doc. No. 29 at 2 ("Farhoud

2

Esheh, who was on the other side of the building near the gas station's car wash, was then approached by the subject. Esheh was vacuuming the backseat of his car when the suspect climbed into the driver's seat and demanded Esheh hand over his money and keys.[4] Esheh retrieved a pistol that he kept in the back seat of his car and backed away from the vehicle. The suspect exited the car and again put his hand on his waistband in a way that made Esheh suspect that he was attempting to retrieve a firearm.[5] Esheh fired a warning shot into the air and the suspect fled. Both Farhoud and Esheh described the suspect as a mid-twenties Black male with a full beard wearing jeans, a black hooded sweatshirt, and a black skull cap.

The Police then interviewed the on-duty gas station clerk, Michele Tumlin, who said she did not see either incident but claimed she was familiar with the suspect because he regularly stood outside of the Phillips 66 asking for money. Tumlin described the

---

stated he . . . saw that the suspect was holding his waist band of his pants, as if to suggest he had a pistol. . . . Esheh stated the suspect . . . was grabbing at his waist band which Esheh stated he thought [meant that] the suspect was attempting to get a gun.")). Because Plaintiff's claim is directly refuted by the record, it does not create a genuine dispute of material fact. *See Armour & Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993) (conclusory statements without support in the record are insufficient to defeat summary judgment).

[4] Neither Plaintiff nor Defendant mentioned in their statement of facts where Esheh was when he saw the suspect. However, the official police report—which both parties rely on in their statement of facts—describes Esheh's recollection of the robbery. (*See* Offense/Incident Report, Doc. No. 29 at 2).

[5] Plaintiff claims that Esheh did not report that the suspect implied he had a firearm. (Plaintiff's Statement of Facts, Doc. No. 38 at ¶ 28). However, Plaintiff has no first-hand knowledge of this fact, and it is refuted by the record. *See supra* note 3.

suspect as a tall, skinny Black male in his mid-twenties to mid-thirties who had a scruffy beard and long braids or dreads.[6]

Following the interviews, Hazelwood Detective James Sieve created two separate photo lineups each with six individuals who had similar appearances to the descriptions provided by Farhoud, Esheh, and Tumlin.  Detective Sieve directed another police officer—who had no knowledge of the case—to present the lineups to the victims and the clerk.  Neither victim picked anyone out of the lineups.  Similarly, Tumlin stated that she recognized certain individuals in the lineups because they frequented the store but said she did not think any of the people shown were the suspect.

On November 18, 2016, Hazelwood Detective Brenden Gilbert reviewed surveillance video from the Phillips 66 gas station in an attempt to identify the suspect. Detective Gilbert reported that the suspect was a Black male with a beard wearing camo pants, white and black shoes, a plaid jacket, and a stocking cap.  Two days later, Hazelwood Officer Hartman observed a Black male with a beard matching the description given by Detective Gilbert begging a passerby for money in the vicinity of where the robbery took place.  Officer Hartman spoke with the man who identified himself as Plaintiff Bernard Furr.  Officer Hartman subsequently passed along Plaintiff's name to Detective Sieve who created a new photo lineup of six subjects which included

---

[6] In his statement of facts, Plaintiff notes that Tumlin is White; that both Farhoud and Esheh are Middle Eastern; and that Farhoud's first language was not English which created a "strong language barrier" between him and the officers.  (Doc. No. 38 ¶¶ 3-5). Plaintiff never explains in his argument, however, why the racial makeup of the witnesses or Farhoud's English proficiency is material or relevant to his claims.

4

Plaintiff.[7]  Detective Sieve asked an officer who did not know which picture was of Plaintiff to present the lineup to the victims.

Farhoud identified Plaintiff as the individual who attempted to rob him.  When asked how sure he was on a scale from 1 to 10, Farhoud stated, "I am 100 percent sure he is the one who tried to rob me."  Detective Sieve noted that the area in which Farhoud saw the suspect was fully lit and that they had been within touching distance with no barrier between them that would have interfered with him seeing the suspect.  Detective Sieve also made note that Farhoud wears prescription glasses and that he was wearing them the day of the attempted robbery and when he selected Plaintiff out from the lineup.

Esheh also identified Plaintiff as the individual who attempted to rob him.  When asked how sure he was on a scale from 1 to 10, Esheh said, "I am about 8 out of 10 sure, it was pretty dark inside the car when I got the best look at his face."  Detective Sieve noted that the area where Esheh saw the suspect was artificially lit and that the they had been within touching distance with no barrier between them that would have interfered with him seeing the suspect.  Tumlin, the clerk who said she was familiar with the

---

[7] Plaintiff asserts that he was the only suspect in the lineup that had a beard.  ("[A]ll three witnesses indicated that the suspect had a full beard.  In the photo lineup shown to Farhoud and Esheh, plaintiff was the **only one of the six men with a beard**." (Plaintiff's Statement of Material Facts, Doc. No. 38, at 9)).  The Court has reviewed the lineup, however, and notes that three of the six men (including Plaintiff) have facial hair and that Plaintiff and another suspect both have a full beard.  (*See* Doc. No. 29-1 at 53).  Further, the two earlier lineups that were shown to Farhoud, Esheh, and Tumlin all contained suspects with full beards.  (*See id.* at 54 (containing three suspects with full beards); *id.* at 55 (containing four suspects with full beards)).  Because Plaintiff's assertion is directly refuted by the record, it does not create a genuine dispute of material fact.  *See Armour & Co., Inc.*, 2 F.3d at 279.

5

suspect, was not shown the new lineup. Following the victims' identifications, Detective Sieve listed Plaintiff as wanted for attempted robbery.

On November 30, 2016, Detective Sieve was on patrol and saw Plaintiff walking down the street. Detective Sieve arrested Plaintiff, brought him to the Hazelwood police department, and booked him. Plaintiff voluntarily spoke with the police and told them that he was employed in Hazelwood, that he had not tried to rob anyone, and that they had the wrong person. Plaintiff, relying on his interrogatory answers as proof, also asserts that he told police that on the day of the crime he may have been at work or in the hospital, but that he got the impression that the officer who was interviewing him had no regard for what he was saying. While Defendant disputes that Plaintiff made any statement about him possibly being hospitalized at the time of the attempted robberies to members of the Hazelwood Police Department, the Court accepts, for purposes of this motion, that Plaintiff may have made such a statement to the police.

On December 1, 2016, Detective Gilbert presented the facts and circumstances of the case to the St. Louis County Prosecuting Attorney's Office. Detective Gilbert reported the following in his probable cause statement:

> I, Brendan Gilbert, DSN 0398, Hazelwood Police Department, knowing that false statement on the form are punishable by law, state that the facts contained herein are true. I have probable cause to believe that on November 17, 2016, at 7323 N. Lindberg Blvd, Bernard Furr, Black, Male, DOB 08/30/1980, 6'00", 180lbs, committed one or more criminal offense(s).
>
> Count:01    ATTEMPTED ROBBERY 1ST DEGREE – CLASS B FELONY
>
> Count:02    ATTEMPTED ROBBERY 1ST DEGREE – CLASS B FELONY

6

> The facts supporting this belief are as follows: The defendant was identified as the person who attempted to rob two victims at a gas station. He approached both victims on foot, demanded property from them, and implied he had a weapon with his hands concealed.[8]

Prosecuting Attorney Tanisha Bull, after reviewing the facts and circumstances of the case, then issued a Complaint against Bernard Furr for two counts of attempted robbery in the 1st degree.

Charges against Plaintiff were ultimately dropped after victims failed to appear to a preliminary hearing. Plaintiff was subsequently released from the St. Louis County Justice Center after spending approximately ninety days in confinement. It was later confirmed that Plaintiff was, in fact, innocent of the alleged crimes because he had been receiving treatment at St. Louis University Hospital during the time of the attempted robberies.

## **ARGUMENTS OF THE PARTIES**

Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims. Defendant first asserts that Plaintiff's § 1983 claims cannot proceed to trial because Plaintiff has neither identified a policy or custom of the Hazelwood Police Department that resulted in a constitutional violation or shown that the police department inadequately trained its officers. Without evidence that the Department had a wrongful policy or custom or failed to train its officers, Defendant argues that Plaintiff cannot

---

[8] (Probable Cause Statement, Doc. No. 29-3).

7

establish municipal liability under *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978).

Defendant next argues that Plaintiff has failed to substantiate his state law claims for malicious prosecution, false imprisonment, and abuse of process. Specifically, Defendant asserts it should be granted summary judgment (1) on Plaintiff's malicious prosecution claim because Plaintiff has failed to show a want of probable cause for prosecution or that the Police Officers' conduct was malicious; (2) on Plaintiff's false imprisonment claim because Hazelwood Police reasonably believed that Plaintiff was guilty for the attempted robberies when he was arrested; (3) and, finally, on Plaintiff's abuse of process claim because Plaintiff has failed to show that police officers arrested him for an improper, collateral purpose.

Plaintiff, in response, argues that the Hazelwood Police conducted a "clearly inadequate" investigation, the flaws of which provide sufficient evidence of his claims. Plaintiff alleges the following missteps in the investigation:

1. Plaintiff came under suspicion even though he did not match the descriptions given by the victims and Tumlin. Specifically, Plaintiff notes that both victims said the suspect was in his mid-twenties and that Tumlin stated that the suspect had dreads or braids; Plaintiff, however, is in his mid-thirties and has a short afro.

2. Tumlin, who said she was familiar with the suspect because he would often stand outside the gas station, was not shown the lineup that included Plaintiff.

3. None of the police officers working his case verified the alibi that he allegedly gave—that he may have been at work or at the hospital the day the robberies were committed—even though he relentlessly asserted his innocence and made clear he was a working man with no reason to rob anyone.

8

      4.      Officer Gilbert gave a dishonest probable cause statement that incorrectly identified Plaintiff as the perpetrator.[9]

Plaintiff argues that these alleged investigatory flaws establish municipal liability because they demonstrate that the Hazelwood Officers were clearly inadequately trained. He further asserts that these same facts provide sufficient evidence that there was a lack of probable cause to instigate prosecution, that the prosecution was malicious, that the police did not have a reasonable belief to arrest Plaintiff, and that they arrested him for a collateral purpose.

## SUMMARY JUDGMENT STANDARD

Federal Rules of Civil Procedure Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences which reasonably may be drawn [therefrom] in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). "The nonmoving may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. The nonmoving party's allegations must be supported by sufficient probative evidence

---

[9] Plaintiff also alleged two additional investigatory failures: (1) that the lineup containing Plaintiff was impermissibly suggestive because he was the only suspect pictured with a beard and (2) that Officer Gilbert's probable cause statement was false because he wrote that the suspect "implied he had a weapon" during the robberies. As discussed *supra* in footnotes 3, 5, and 7, these assertions are directly refuted by the record and, thus, cannot be used to create a genuine dispute of material fact for the purposes of defeating summary judgment.

that would permit a finding in his favor on more than mere speculation[.]" *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (citations omitted).

## DISCUSSION

### I.     *Monell* Claims under 42 U.S.C. § 1983

Municipalities cannot be liable under § 1983 on the basis of *respondeat superior*. *Holmes v. Slay*, 99 F. Supp. 3d 978, 983 (E.D. Mo. 2015) (citing *Monell*, 436 U.S. at 691). However, a municipality may be liable under §1983 for a violation of an individual's constitutional or statutory rights if the violation resulted from: (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff must show that the policy, custom, or failure to train or supervise was "the moving force behind the constitutional violation." *McKay v. City of St. Louis, Mo.*, No. 4:15-CV-01315-JAR, 2019 WL 1436972, at *10 (E.D. Mo. Mar. 31, 2019) (quoting *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 799 (8th Cir. 1998)).

### *Policy or Custom in Violation of § 1983*

To establish municipal liability based on policy, a plaintiff must identify "an official policy, [or] a deliberate choice of a guiding principle or procedure made by the municipal officer who has final authority regarding such matters." *McKay*, 2019 WL 1436972, at *11 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). If a plaintiff cannot identify a formal policy or decision giving rise to unconstitutional conduct, he may instead prove *Monell* liability by showing that the City had a custom of ignoring unconstitutional behavior. *See id.* at *12 (citing *Marchant v. City of Little Rock,*

*Ark*, 741 F.2d 201, 204 (8th Cir. 1984)). In order to establish *Monell* liability based on a custom,

> plaintiff must demonstrate: (1) 'a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees' significant enough as to have the force and effect of law; (2) 'deliberate indifference to or tacit authorization of such conduct by the municipality's policy-making officials after notice to the officials'; and (3) 'that the custom was the moving force behind the constitutional violation.'

*Id.* (quoting *Robinson v. City of St. Louis, Mo.*, 2018 WL 1695534, at *13 (E.D. Mo. Apr. 6, 2018)).

Defendant argues that it is entitled to summary judgment on Plaintiff's *Monell* claims that are based on a policy or custom theory of liability because Plaintiff has failed to identify any policy or custom that resulted in constitutional violations. Instead, Defendant claims, "Plaintiff attempts to use 'failure to train' arguments to establish the existence of a policy or custom." (Doc. No. 40 at 2). In response, Plaintiff makes the conclusory claim that he has identified a policy or custom to establish *Monell* liability but then proceeds to offer only arguments aimed at showing that Defendant failed to train its officers. (Doc. No. 38 at 7-10).

The Court agrees with Defendant that Plaintiff has only presented arguments asserting an alleged unconstitutional failure to train. Thus, to the extent Plaintiff is attempting to establish *Monell* liability under a policy or custom theory of liability in addition to his failure to train claim, he fails to do so as a matter of law because he has neither identified a formal policy giving rise to the alleged constitutional violations or

11

provided evidence of a custom of "continuing, widespread persistent pattern[s] of unconstitutional misconduct." *See McKay*, 2019 WL 1436972, at *11-13.

### *Failure to Train*

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Even so,

> [a] local government may be subject to § 1983 liability for [the] inadequate training of its employees where (1) the city's training practices were inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by the city; and (3) an alleged deficiency in the training procedures actually caused the plaintiff[']s injury.

*Bry v. City of Frontenac*, No. 4:14-CV-1501 RLW, 2015 WL 9275661, at *9 (E.D. Mo. Dec. 18, 2015) (citing *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010)).

In alleging deliberate indifference, it is not enough for plaintiff to "prove that an injury or accident could have been avoided if an officer had had better or more training" because such a standard "would open municipalities to unprecedented liability under § 1983." *City of Canton, Ohio*, 489 U.S. at 391. Rather, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence" of its training program. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). When policymakers "are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the governmental entity may be deemed deliberately indifferent if the policymakers choose to retain that program."

12

*White v. Jackson*, No. 4:14-CV-1490 HEA, 2015 WL 1189963, at *4 (E.D. Mo. March 16, 2015) (citing *Brown*, 520 U.S. at 407).

A plaintiff may prove notice by showing either that: (1) "the failure to train is so likely to result in a violation of constitutional rights that the need for training is patently obvious"; or (2) "a pattern of misconduct indicates that the [municipality's] responses to a regularly recurring situation are insufficient to protect the [people's] constitutional rights." *Zorich v. St. Louis Cty.*, No. 4:17-CV-1522 PLC, 2018 WL 6621525, at *28 (E.D. Mo. Dec. 18, 2018) (citing *Larkin v. St. Louis Hous. Auth. Dev't Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004)). The "single-incident" theory—that the alleged constitutional violation was the obvious consequence of inadequate training—arises only in a narrow range of circumstances. *Jenkins v. Saint Louis Cty.*, No. 4:10-CV-827-SNLJ, 2011 WL 5868310, at *11 (E.D. Mo. Nov. 22, 2011). "These 'circumstances' generally involve incidents arising from a total lack of training, not simply an assertion that a municipal employee was not trained about 'the specific scenario related to the violation [in the given case].'" *Id.* (quoting *Connick*, 563 U.S. at 67).

Defendant argues that it is entitled to summary judgment on Plaintiff's failure to train claim because Plaintiff has not produced any evidence that the officers were improperly trained or that the training they received had an effect on how the investigation was conducted. Defendant further alleges that Plaintiff has not shown any evidence that Defendant was on notice of the inadequacy of its training program and that, instead, Plaintiff attempts to argue that Defendant is liable because the officers should

13

have "had better or more training"—an argument explicitly foreclosed by the Supreme Court.

Plaintiff, in response, argues that the alleged flaws in the investigation make it "unquestionable" that the officers were inadequately trained. Plaintiff does not cite to any facts showing that the alleged constitutional violations he encountered were part of a larger pattern of Defendant's misconduct. Instead, Plaintiff highlights the following alleged missteps that occurred during his investigation as proof that Defendant failed to train its police officers: (1) Police Officers suspected Plaintiff even though he was a decade older than the victims believed the suspect to be and had a short afro while the clerk said the suspect had dreads or braids; (2) Police Officers never showed the lineup containing his picture to the clerk who expressed she was familiar with the suspect;[10] (3) Police Officers never verified his alibi that he may be at work or at the hospital the day of the crime; and (4) Officer Gilbert lied in his probable cause statement by saying Plaintiff was guilty even though he was, in fact, innocent.

Upon review, the Court agrees with Defendant that Plaintiff has failed to set forth sufficient evidence from which a reasonable jury could find Defendant liable for a failure to train. At no point in Plaintiff's argument does he discuss the training that Hazelwood Officers undergo, explain how the training they receive is inadequate, or specify what

---

[10] The Court is unclear why it was an error for police to suspect Plaintiff even though he had a different hairstyle than the one described by the clerk, or why it was a failure not to show the clerk the final photo array. Although the clerk expressed familiarity with who the suspect might be, she explicitly told police she did not witness either incident. The victims, however, both saw the suspect and identified his photo. As such, it is difficult to see how these facts help support Plaintiff's claim.

training the Officers did not receive that resulted in the alleged misconduct.  Rather, Plaintiff has asserted—both in his interrogatory responses[11] and in his deposition—that the only evidence he has of Defendant failing to train its officers is the police report for his case.  For example, when asked in his deposition about his failure to train claim, Plaintiff stated,

> I came up with that conclusion because of what I read in the police report and how they handled this whole case. That's why I came up with that conclusion, you know. . . . Because of the way, you know, what they wrote in the police report, you know. It was like it seemed to me like they were very inexperienced officers, detectives. They were very inexperienced to me. That's just my opinion though.

(Plaintiff's Deposition Transcript, Doc. No. 29-2, 107:18 - 108:2).  This police report, however, is silent as to the training that Hazelwood police officers receive.

At base, Plaintiff's argument is that if Defendant had supplied its officers with better, unspecified training the alleged missteps would have been avoided and Plaintiff would not have been mistakenly arrested and charged.  Yet, this argument—that a municipality is liable when "an injury or accident could have been avoided if an officer had had better or more training"—has been foreclosed by the Supreme Court.  *See City of Canton, Ohio*, 489 U.S. at 391.  Because there is nothing in the record which shows that Defendant was on notice of its training procedures being inadequate, Plaintiff has failed to provide evidence that Defendant acted with deliberate indifference.  Therefore,

---

[11] In his interrogatory response, Plaintiff stated that the factual basis for his failure to train claim was "the actions of the arresting officers . . . [as] memorialized in the Police Department report."  (Doc. No. 35-1 at ¶ 10).

Defendant's motion for summary judgment as to Plaintiff's failure to train claim, and other § 1983 claims, will be granted.

## II. State Law Claims

Under 28 U.S.C. § 1367, in any civil action in which a district court has original jurisdiction, it shall also have supplemental jurisdiction over all claims so related to the claims in the original jurisdiction that form part of the same case or controversy. Once a federal court has dismissed all claims over which it had original jurisdiction, it has the discretion to decline the exercise of supplemental jurisdiction over the remaining state law claims. *Steed v. Mo. State Highway Patrol*, No. 4:17-CV-1440 HEA, 2020 WL 2615633, at *11 (E.D. Mo. May 22, 2020). In these circumstances, district courts ordinarily dismiss the state law claims without prejudice "to avoid needless decisions of state law . . . as a matter of comity." *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000) (internal quotations omitted) (quoting *ACLU v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999). Because "[t]he judicial resources of the federal courts are sparse compared to the states," the Eighth Circuit has routinely emphasized "the need [for district courts] to exercise judicial restraint and avoid state law issues wherever possible." *Id.* at 420 (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir.1990)).

Having granted Defendant summary judgment on the federal claims asserted, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims and will dismiss those claims without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Ivy v. Kimbrough*, 115 F.3d 550, 552-53 (8th Cir. 1997) ("In most cases, when federal and state claims are joined and the federal claims are dismissed on a motion for summary

16

judgment, the pendent state claims are dismissed without prejudice to avoid needless decisions of state law as a matter of comity and to promote justice between the parties.") (citations omitted).

### III. Conclusion

For these reasons, the Court finds and concludes that Defendant is entitled to summary judgment on Plaintiff's § 1983 claims. Because the Court has dismissed the federal claims against Defendant, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of Hazelwood's Motion for Summary Judgment is **GRANTED** as to Plaintiff's 42 U.S.C. § 1983 claims. (Doc. No. 26).

**IT IS FURTHER ORDERED** that Plaintiff's remaining state law claims are **DISMISSED** without prejudice. A separate Judgment will accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 5th day of August, 2020.